Pratt, J,
The answer sets up numerous defenses, but only two were insisted upon at the trial.
The seventh subdivision of the answer states that the plaintiff falsely represented himself to be possessed of full, complete, practical and scientific knowledge of, as well as experience in, the manufacture of chemical fertilizers, and by such false representations, and by other false and fraudulent representations, fraudulently induced defendants to enter into the contract sued upon.
Upon the trial, it was admitted that plaintiff did not, before the contract was made, represent himself as having a scientific knowledge of the manufacture of fertilizers.
It was shown that he had been for several years actively. engaged in that manufacture, and had made and sold as much as 30,000 tons in a year. It cannot be seriously contended that the specific representations set forth in the answer, were not shown to be true, but defendants claimed to be able to prove that plaintiff made other and further representations to the effect that he had special knowledge not common to well informed manufacturers, and that by the aid of methods of work peculiar to himself, he could produce fertilizers at a price much below that at which they could be made by others.
Proof of such representations was objected to by plaintiff and excluded, and upon the exception taken by defendants to such exclusion, arises one of the questions now to be. considered.
Defendants concede, that as a general rule, a bold allegation of fraud in a pleading is bad, as averring a legal conclusion and not a fact, but they claim that where there is a specific allegation followed by a general allegation, as in this case, of other false and fraudulent representations, the plaintiff, to protect himself from being surprised upon the trial by proof of alleged false representations of which he has had no notice, must before trial obtain an order requiring the pleading to be made more definite, or must get a bill of particulars of the fraudulent allegations to be put in proof.
We do not so understand the rule. When a litigant bases his cause.upon the fraudulent conduct of the opposite party, he must be presumed to be aware of the frauds from which he suffers, and it is no hardship to require them to be stated with reasonable precision. The same reason exists for requiring all the facts to be pleaded upon which fraud is predicated as for requiring any.
If, by adding to the one fact well pleaded the formula, “other false and fraudulent representations,” the scope of admissible evidence could be enlarged, astute pleaders. *562 would never plead in any other way. Motions to compel further definiteness would be constant, and the easily foreseen result would be that every trial in which fraud is an element -would be a series of surprises.
The rule requiring the fact upon which fraud is predicated to he pleaded, is essential to the administration of justice and should not be relaxed.
It follows that the testimony of representations other than those pleaded was properly excluded.
The defendants call attention to the fact that the circuit judge at one stage of the case allowed them to introduce such evidence, and complain of his inconsistency in after-wards excluding it. The error of such introduction, even though it was afterwards struck out, might well be complained of by the plaintiff. For, as the court finally left to the jury the question whether the contract was induced by fraud, the recollection of the testimony erroneously admitted would probably, in a doubtful case, have resulted in a verdict for defendant. But as the final result was in favor of plaintiff, the error may be considered cured.
The defense chiefly insisted upon is, that while bound to render to defendants his best service, he fraudulently negotiated sales in which, without the knowledge of defendants, he was adversely interested.
The testimony shows that the sale referred to was not negotiated by plaintiff, but by the president of defendants. It was, however, recommended by plaintiff, but, if his interest in the purchase had been kept a secret from plaintiff, it could be argued with great force that such suppression was an ample ground to discharge plaintiff from ■defendant’s employ.
If, on the contrary, defendants knew of plaintiff’s interest in the purchase, his participation in the negotiations was no offense in law or morals.
Plaintiff’s contract with defendants expressly provides that he shall continue in the manufacture and sale of fertilizers upon his own account, and necessarily as a business rival of defendants. It appears that plaintiff’s own firm had a large call for goods from a Virginia firm, with whom he dealt upon joint account, and that he advised defendants to supply a portion of the goods called for. The price was made by defendant’s president, and was forty cents a ton more than the price suggested by plaintiff. It appears that, in fixing the price, defendants relied upon their New Bedford agents and not upon plaintiff.
Whether defendant’s president was notified of plaintiff's joint interest in the purchase may perhaps be open to discussion. He testifies that at the time the contract was made he had no such knowledge. But a large number of *563 witnesses, most of whom seem to be entirely without interest in the cause, testify that he was fully informed. His own evidence shows that the matter became a subject of discussion between him and the plaintiff while the contract was in process of execution, and his account of the conversation, as he now recalls it, does not seem to show surprise, and he certainly made no remonstrance.
In view of the fact, brought out in his testimony, that illness has impaired his memory, which is also otherwise "apparent, we incline to think that it may be taken as a fact established that President Barling was fully informed of plaintiff’s joint interest in the purchase.
The question, however, becomes unimportant in view of the undeniable evidence that Terry, one of defendant’s directors, who was in New Bedford at the time the contract was under discussion, and who was repeatedly consulted by Barling in reference to it, was fully informed of plaintiff’s relations to the contract. Terry testifies that he had such knowledge and discussed Read’s interest in the purchase with Barling while the contract was being negotiated. Bar-ling does not recall this, but his failure to remember that fact as making a part of his discussions with Terry does not cast any doubt upon the fact of Terry having possessed such knowledge. He was director in the company and superintendent of the building. His knowledge of Read’s interest in the purchase was complete, and binds defendants. He testifies that he imparted it to Barling—certainly he would have done so had he regarded it as material. If he failed to do so, it could only be because Barling knew the fact already, or it was esteemed of no importance.
It follows that as defendants had full knowledge of Read’s joint interest in the purchase, no defense can be sustained resulting from it. Various requests to charge were denied, but as we are of opinion that upon the evidence a. verdict might have properly been directed for the plaintiff, it would be unprofitable to discuss them. None of the refusals injured the defendants, and the judgment must be affirmed with costs.
Barnard, P. J., and Dykman, J., concur.